**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

AARON STRONG                                                                                    PLAINTIFF
ADC# 123670

v.                                            4:13CV00663-JM-JJV

RAY HOBBS, *et al.*                                                               DEFENDANTS

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

      The following recommended disposition has been sent to United States District Judge James M. Moody, Jr.  Any party may serve and file written objections to this recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations.  The copy will be furnished to the opposing party.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.

      If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before either the District Judge or Magistrate Judge, you must, at the time you file your written objections, include the following:

      1.      Why the record made before the Magistrate Judge is inadequate.

      2.      Why the evidence to be proffered at the new hearing (if such a  hearing is granted) was not offered at  the hearing before the Magistrate Judge.

      3.      The details of any testimony desired to be introduced at the new hearing in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial

evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing.  Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

## DISPOSITION

### I.    INTRODUCTION

Plaintiff, Aaron Strong, filed this *pro se* action pursuant to 42 U.S.C. § 1983, claiming Defendants violated his constitutional rights (Doc. No. 1).  Defendants[1] have now filed a Motion for Summary Judgment seeking dismissal of all claims against them. (Doc. No. 28). Plaintiff has not filed a response and the time for doing so has elapsed. Defendants' Motion is, therefore, ripe for disposition.

### II.    BACKGROUND

Plaintiff alleges that Defendants James Hamilton, Lucky Abhulimen,[2] and Gregory McKinney exhibited deliberate indifference to his serious medical needs (Doc. No. 1 at 3-5).  On February 24, 2012, Plaintiff began experiencing weakness and dizziness. (*Id*. at 1).  At the prison infirmary, he was examined by Nurse Abhulimen, who found that his vital signs were normal. (Doc. No. 1 at 3). Nurse Abhulimen instructed Plaintiff to "lay in" for two days and increase his fluid

---

[1]Plaintiff initially named five Defendants to this action. On March 19, 2014, however, Plaintiff's claims against Defendants Hobbs and Kelley were dismissed. (Doc. No. 9). Accordingly, only Defendants Hamilton, Abhulimen, and McKenney remain.

[2]The Court notes that the docket spells Defendant Abhulimen's name as "Abulimen." It also lists Defendant Gregory McKinney's name as "J. McKenney." The Clerk of Court shall correct the spelling for both names.

intake. (*Id*.)

On February 26, 2012, Plaintiff claims his condition again required immediate medical attention, and he returned to the infirmary (*Id*. at 4). At Dr. McKinney's instruction, Nurse Hamilton attempted to administer saline fluid through an I.V. line. (*Id*.) Plaintiff says Nurse Hamilton was unable to start the I.V. and he was left unattended for six to eight hours until another nurse came on duty and started the I.V. the next morning. (*Id*.) Shortly thereafter, he was transported to the University of Arkansas Medical Sciences ("UAMS") (*Id*.)

In response, Defendants argue that Plaintiff has a history of ear infections resulting from a type of "swimmer's ear" (Doc. 28 ¶ 18). Nurse Abhulimen determined that an infection was the source of Plaintiff's discomfort and he prescribed ear drops, a restriction from work, and increased fluid intake. (Id.) Defendants state Plaintiff returned to the infirmary on February 26, 2012, and tests indicated his blood glucose was 529 (*Id*. ¶ 21). Nurse Hamilton tried but was unable to start an I.V., and it was started the following morning by another nurse (*Id*. ¶ 22-23).

Defendants state a second set of lab results was returned on February 27, 2012, and, based on those results, Plaintiff was transferred to UAMS with a diagnosis of diabetes mellitus and diabetes ketoacidosis (*Id*. ¶ 25). While at UAMS, Plaintiff was treated with insulin and intravenous fluids. (Id.) He had no history of diabetes prior to February 2012 (*Id*. ¶ 29).

## III.    SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in

a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

## IV.   ANALYSIS

Defendants argue they are entitled to summary judgment because: (1) Plaintiff failed to exhaust his administrative remedies against Dr. McKinney; and (2) Plaintiff's medical care, or alleged lack thereof, does not rise to an Eighth Amendment violation. The Court will examine each argument in turn.

### A.   Failure to Exhaust Administrative Remedies

Defendants argue that although Plaintiff exhausted three medical grievances between February 2012 and November 21, 2013, none of the grievances specifically named Dr. McKinney. (Doc. No. 29 at 7-8). Plaintiff, in failing to submit a response, has not offered any contradicting arguments or evidence.

The Prison Litigation Reform Act (PLRA) requires an inmate to exhaust prison grievance procedures before filing suit in federal court. *See* 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 202 (2007); *Jones v. Norris*, 310 F.3d 610, 612 (8th Cir. 2002). Exhaustion under the PLRA is

mandatory. *Jones*, 549 U.S. at 211. "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "[T]o properly exhaust administrative remedies, prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218 (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). Compliance with a prison's grievance procedures is, therefore, all that is required by the PLRA to properly exhaust. *Id.* Thus, the question as to whether an inmate has properly exhausted administrative remedies will depend on the specifics of that particular prison's grievance policy. *Id.* at 218.

Defendants state Plaintiff completed the exhaustion process for three medical grievances numbered WR-12-00108, WR-12-00109, and WR-12-00110. (Doc. No. 29 at 7). This contention is supported by the affidavit of Shelly Byers, Medical Grievance Coordinator for the Arkansas Department of Correction (Doc. No. 28-3). These grievances do not specifically name Dr. McKinney. (Doc. No. 28-2). Rather, his involvement can only be inferred from WR-12-00108, which mentions an unnamed doctor ordering Nurse Hamilton to provide Plaintiff with an I.V. on February 26, 2012 (*Id.* at 5). In that grievance, Plaintiff asks why Nurse Hamilton failed to inform the doctor that he could not administer the I.V. and why the doctor did not personally attend him. (Id.)

The relevant Arkansas Department of Correction grievance policy requires inmates using the grievance system to be specific as to "date, place, personnel involved or witnesses." (Doc. No. 28-1 at 5, Section E ¶ 2). The failure to specifically name a prison employee is not always fatal to exhaustion, however. *See Bower v. Kelley*, 494 Fed. Appx. 718, 2012 WL 6199266 (8th Cir. Dec.

13, 2012); *Parks v. Corizon, Inc.*, Case No. 12-3516, 511 Fed. Appx. 588 (8th Cir. June 27, 2013). The relevant question is whether - despite the procedural flaw associated with prisoner's failure to name a defendant in his grievances - prison officials proceed to reach and decide the merits of the specific claims asserted against each defendant. *See Burns v. Eaton*, 752 F.3d 1136, 1141-42 (8th Cir. 2014).

Here, the record for grievance WR-12-00108 convinces the Court that prison officials reviewed and considered Dr. McKinney's failure to treat Plaintiff personally. Notably, Director Kelley's appeal response specifically referenced Dr. McKinney's actions on the day in question. (Doc. No. 28-2 at 1). Kelley notes that Dr. McKinney advised Nurse Hamilton that he was "on the compound and available to start the IV if needed." (*Id.*) Kelley goes on to state that Nurse Hamilton failed to notify Dr. McKinney that he was unable to start the I.V. (*Id.*) Based on the foregoing, the Court finds that prison officials reached the merits of Plaintiff's claims against Dr. McKinney,[3] and the claims were administratively exhausted.

### B.    Deliberate Indifference

Defendants argue that, based on the treatment given Plaintiff prior to his transfer to UAMS, his claims for deliberate indifference against Nurses Hamilton and Abhulimen fail. As previously noted, the Court will also reach the merits of Plaintiff's claims against Dr. McKinney in this analysis.

The Eighth Amendment, which applies to the States through the Due Process Clause of the Fourteenth Amendment, prohibits the infliction of "cruel and unusual punishments" on those convicted of crimes. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). Deliberate indifference to the

---

[3]The Court also concludes, based on the evidence and current allegations before it, that no viable claim for deliberate indifference can be made against Defendant McKinney. Pursuant to the screening requirement of 42 U.S.C. § 1997e, the Court will, therefore, dispose of these claims on the merits in the analysis which follows.

serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (deliberate indifference includes intentional interference with prescribed treatment; inadvertent or negligent failure to provide adequate medical care cannot be said to constitute "unnecessary and wanton infliction of pain"). "Deliberate indifference may include intentionally denying or delaying access to medical care, or intentionally interfering with treatment or medication that has been prescribed." *Vaughan v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995). However, "[a] showing of deliberate indifference is greater than gross negligence and requires more than mere disagreement with treatment decisions." *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006).

The United States Court of Appeals for the Eighth Circuit has explained:

> Prison doctors and guards violate the Eighth Amendment when they act with 'deliberate indifference to [an inmate's] serious medical needs.' 'Deliberate indifference' entails a level of culpability equal to the criminal law definition of recklessness, that is, a prison official 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Likewise, an inmate's 'mere disagreement with the course of his medical treatment' fails to state a claim of deliberate indifference.

*Bender v. Regier*, 385 F.3d 1133, 1137 (8th Cir. 2004) (citations omitted).

Turning first to Plaintiff's treatment by Nurse Abhulimen, the Court finds that nothing in the record supports a claim for deliberate indifference. Plaintiff alleges that Nurse Abhulimen examined him at the infirmary for complaints of fever, muscle pain, and dizziness.[4] Neither party disputes that Nurse Abhulimen examined Plaintiff, found his vitals to be normal, and prescribed reduced work

---

[4]Plaintiff does allege that Nurse Abhulimen expressed exasperation upon seeing him and stated that "he was trying to get out of here and that he was tired of the officers sending inmates who are not sick but trying to get out of work." (Doc. No. 1 at 3). While such a statement, if actually expressed, might be unprofessional, it does not give rise to a claim of deliberate indifference.

and increased fluid intake. (Doc. No. 1 at 3; Doc. No. 28 ¶ 17-18). Defendants state that Nurse

Abhulimen reached this prescription based on Plaintiff's history of ear infections. (Doc. No. 28

¶ 18). Based on the foregoing, the Court finds that, at worst, Nurse Abhulimen's treatment may have

been negligent insofar as he failed to diagnose Plaintiff's diabetic symptoms. A claim for deliberate

indifference, however, as noted above, requires more than negligence.

Plaintiff's claims against Nurse Hamilton center on his inability to start a saline I.V. (Doc.

No. 1 at 4). As a result, Plaintiff received the I.V. the following morning, some six to eight hours

after the physician ordered it (Doc. No. 1 at 4-5). It is well settled, however, that a successful claim

for deliberate indifference requires not only proof that a defendant knew of and disregarded

excessive risks to an inmate's health, but that an injury in fact resulted from the defendant's conduct.

*See Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006). Here, Plaintiff has failed to allege that

Nurse Hamilton's failure to timely administer the I.V. resulted in any cognizable injury to him.

Moreover, Defendants have offered the affidavit of Dr. Robert Floss who finds that, based on his

examination of the relevant medical records, Plaintiff's care was appropriate and he suffered no

adverse effect to his diabetic prognosis as a result of that care. (Doc. No. 28-6 at 4).[5] Based on the

foregoing, the Court finds that Plaintiff's claims for deliberate indifference against Nurse Hamilton

fail.

Finally, the Court finds that Plaintiff's claim for deliberate indifference against Dr.

McKinney also fails. Dr. McKinney ordered Nurse Hamilton to start an I.V. drip. (Doc. No. 1 at 4).

In so doing, Plaintiff alleges that Dr. McKinney was made aware of his condition but failed to

---

[5]The Court notes that, in the face of medical records indicating that treatment was provided and physician affidavits indicating that the treatment was adequate, a plaintiff may not create a question of fact simply by alleging that he did not feel that the treatment was adequate. *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997).

respond when the I.V. could not be started. (Doc. No. 26 at 4). As noted above, however, the Court finds that Plaintiff is unable to establish a specific, cognizable injury resulting from the failure to provide him an I.V. in a timely manner. Absent such an injury, the Court concludes that Dr. McKinney is entitled to dismissal of Plaintiff's claims against him.

## V.  CONCLUSION

IT IS, THEREFORE, RECOMMENDED THAT:

1.      The Clerk of Court alter the docket to reflect that Defendant "Lucky Abulimen" is properly "Lucky Abhulimen."

2.      The Clerk of Court alter the docket to reflect that Defendant "J. McKenney" is properly "Gregory McKinney."

3.      Defendants' Motion for Summary Judgment (Doc. No. 27) be GRANTED.

4.      Plaintiff's claims against Defendants Lucky Abhulimen, James Hamilton, and Gregory McKinney be DISMISSED with prejudice.

5.      The Court certify that, pursuant to 28 U.S.C. § 1915(a)(3), an *in forma pauperis* appeal from an Order adopting this Recommendation and the accompanying Judgment would not be taken in good faith.

IT IS SO RECOMMENDED this 13th day of November, 2014.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE